UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

CARLA STAFFORD,                          )
                                         )
        *Plaintiff*,                     )
                                         )   Case No. 4:06-cv-35
v.                                       )
                                         )   Judge Mattice
SANFORD, L.P.,                           )
                                         )
        *Defendant*.                     )

## MEMORANDUM AND ORDER

Plaintiff Carla Stafford brings this action against Defendant Sanford, L.P., alleging reverse race discrimination and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*

Before the Court is Defendant's Motion for Summary Judgment [Court Doc. No. 23]. For the reasons explained below, such motion is **GRANTED**.

## I.    STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  The Court cannot weigh the evidence, judge the

credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

### A.    Propriety of Affidavits Submitted by Plaintiff

In support of her opposition to Defendant's motion, Plaintiff submitted affidavits by four affiants: Alvin Parker, Deborah D. Walchshauser, Tammy Patrick, and herself. Defendant asserts that portions of the affidavits of Parker, Walchshauser, and Stafford should be ignored because they contradict prior sworn testimony given by those affiants.

It is settled law that the nonmoving party may not properly defend against a motion for summary judgment by submitting an affidavit that directly contradicts the affiant's prior deposition testimony. *Aerel S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006) (affidavit and prior testimony by a party); *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001) (affidavit and prior testimony by a non-party). To determine whether an affidavit may be disregarded or stricken pursuant to this rule, the Court must first determine whether the affidavit directly contradicts the prior sworn testimony of the affiant. *Aerel*, 448 F.3d at 908.

In this instance, Defendant first objects to the affidavit of Plaintiff Stafford on the basis that her affidavit directly contradicts her prior deposition testimony as to the issue of her personal knowledge regarding similarly-situated individuals who were treated differently. In her deposition, Plaintiff was asked the following question: "Do you have personal knowledge of any other person at Sanford who engaged in the same behavior that you did with multiple safety issues within a close period of time that wasn't treated the same way you were, any examples at all?" (Court Doc. No. 23-2, Stafford Dep. 313-14.) Plaintiff responded, "No." (*Id.* at 314.) Then, in the affidavit she submitted in opposition to Defendant's summary judgment motion, Plaintiff states that she "witnessed other employees, male and female, black and white, who have committed three or more safety violations within an 18-day period," including James Crosslin, Andy Rogers, Earl Teish, William Lovelace, and Karen Collins. (Court Doc. No. 35, Stafford Aff. ¶ 19.) She also states in her affidavit that she "witnessed both Earl Teisch (white male) and Tammy Patrick (black female) violate safety rules while on final warning and neither of them [were] disciplined according to Sanford's progressive discipline policy" (*id.* ¶ 20) and that she

"witnessed Brenda Allen take action to discipline me, a white female, and witnessed Brenda Allen not take any action to discipline males and a black female, and [has] even witnessed Brenda Allen making excuses for a black female, in same or similar situations as my own" (*id.* ¶ 22).

The Court concludes that the statements Plaintiff makes in her affidavit regarding different treatment of others in similar situations directly contradict Plaintiff's prior deposition testimony that she had no personal knowledge of other similarly-situated persons who were treated differently. Accordingly, the directly contradictory portions of Plaintiff's affidavit, as outlined above, will be ignored by the Court.

Defendant next objects to the affidavit of Alvin Parker on the basis that his affidavit directly contradicts his prior deposition testimony as to the issue of his personal knowledge regarding any discipline received by other individuals. In his deposition, Parker was asked the following question: "And you also don't have any knowledge, personal knowledge of what discipline was given to these people because you weren't involved in the investigations or the decisions on whether discipline was appropriate or not, correct?" (Court Doc. No. 38-2, Parker Dep. 24.) Parker responded, "Yes, sir. That's not my job." (*Id.*) Then, in his affidavit, Parker states that Brenda VanZant and Kelly Patch were not disciplined when they made certain mistakes (Court Doc. No. 33, Parker Aff. ¶ 15), that Brenda VanZant was never disciplined for her actions (*id.* ¶ 19), and that Earl Teisch, Tammy Patrick, and Brad Majors were all on final warnings when they committed certain safety violations (*id.* ¶ 8).

The Court concludes that the statements Parker makes in his affidavit regarding the discipline or lack thereof received by various employees directly contradict his prior

deposition testimony that he had no personal knowledge of the discipline received any anyone. Accordingly, the directly contradictory portions of Parker's affidavit, as outlined above, will be ignored by the Court.

Defendant also purports to object to the affidavit of Deborah D. Walchshauser, but Defendant fails to cite to any specific portions of Walchshauser's affidavit or deposition which it contends are contradictory. Accordingly, Defendant's objection is not well-taken as to Walchshauser's affidavit, and the Court will consider it in full.

## B. Relevant Facts in the Record

The relevant facts, viewed in the light most favorable to the nonmoving party, are as follows.[1]

Plaintiff Carla Stafford began her employment with Defendant Sanford, L.P. ("Sanford") on or about March 9, 2004, as an Order Processor. (Court Doc. No. 11-2, First Am. Compl. ¶ 5; Stafford Dep. 161-62.) The job of an Order Processor is to "pick" products from Sanford's warehouse to be shipped. (Stafford Dep. 162.) When Stafford was hired, she participated in an orientation process during which various company policies and procedures were reviewed with her, including Sanford's safety and health mission statement and progressive discipline policy. (*Id.* at 128-131.) Stafford also received and

---

[1] With its motion, Defendant submitted a Statement of Undisputed Facts. In her opposition to the motion, Plaintiff did not respond to the Statement; Plaintiff apparently attempted to respond but mistakenly attached a response intended for another case. Defendant now requests that the Court deem Plaintiff to have admitted the facts contained in the Statement. Unlike the local rules of some other courts, the local rules of this Court do not require the inclusion of a statement of undisputed facts; as a result, the Court declines to deem certain facts admitted simply because Plaintiff did not respond to Defendant's Statement.

To the extent, however, that Defendant has submitted evidence related to certain facts and Plaintiff has failed to present any other evidence challenging those facts, the unchallenged evidence will be accepted by the Court. The summary judgment standard requires the Court to view the facts in the record in the light most favorable to the nonmoving party, but it does not require the Court to ignore the only evidence in the record as to a particular fact simply because the moving party submitted that evidence.

reviewed Sanford's employee handbook, which is formally titled the "Hourly Associate Guidebook" ("Guidebook"). (*Id.* at 129-130 & Exs. 3, 4.) Based on this orientation, Stafford understood that safety was important at Sanford. (*Id.* at 132.) The Guidebook provides as follows: "Sanford will provide all associates with the safest possible working conditions and equipment. We ask that you follow all safety instructions and always be aware of your own safety and the safety of your fellow associates. If at any time you discover an unsafe working condition, you should immediately bring it to the attention of your supervisor or Human Resources." (*Id.* Ex. 3 at 60.) Ms. Stafford acknowledges that it was part of her training and part of her job responsibilities as a forklift driver to report any problems with her forklift to her supervisor. (*Id.* at 166.)

Sanford's progressive discipline policy provides as follows: "Disciplinary action will be given when powered industrial trucks are operated unsafely and/or without authorization. Discipline may vary depending upon the severity and/or frequency or the violation of Sanford's policy. Disciplinary action may be in the form of a verbal warning, written warning, suspension, or termination of employment." (*Id.* Ex. 3 at 62.) Sanford's progressive discipline policy further provides, "If it is determined that the accident was caused by associate negligence, the appropriate disciplinary action will be taken, up to and including termination." (*Id.* Ex. 3 at 61.) Ms. Stafford knew that she could be subject to discipline, up to and including termination, if she violated Sanford's safety regulations. (*Id.* at 161.)

On March 27, 2006, Ms. Stafford received a verbal warning for an unexcused absence and tardiness. (*Id.* at 176-77 & Ex. 12.) Then, on March 29, 2006, Ms. Stafford

received a verbal warning for failure to follow instructions and carelessness. (*Id.* at 178 & Ex. 13.) This second verbal warning related to Ms. Stafford's scanning of 27 cartons of merchandise without physically putting those cartons on a pallet. (*Id.* Ex. 13.)

On April 3, 2006, Ms. Stafford received a written warning for violation of safety rules, carelessness, and an unsafe act. (*Id.* at 208-211 & Ex. 16.) This written warning stemmed from an incident in which Plaintiff injured herself by improperly pulling shrink-wrap off merchandise by wrapping her arm in the shrink-wrap and pulling it, rather than by using a safety knife. (*Id.* at 208-211 & Exs. 14, 16; Court Doc. No. 23-3, Wolfe Decl. ¶ 5.) Ms. Stafford recalls reporting this incident to her supervisor, but she does not recall receiving any counseling or discipline as a result of this incident. (Stafford Dep. 211-12.)

On April 7, 2006, Ms. Stafford received a final warning for violation of safety rules, carelessness, and an unsafe act related to her incorrect placement of a large, awkward box on top of a full pallet, which strained the muscles in her back. (*Id.* at 212-14 & Exs. 15, 17; Wolfe Decl. ¶ 6.)

On April 21, 2006, Ms. Stafford failed to report a malfunction of the horn on her pallet rider, though she knew that she should have reported it. (Stafford Dep. 234-35.) Later in the day, as she was driving her pallet rider, the horn malfunctioned again, and Ms. Stafford struck her hand against the horn in an attempt to correct the malfunction. (*Id.* at 225-26, 253-54.) When she did so, she hurt her hand, and the pain caused her to stop her pallet rider abruptly, which resulted in another employee, Tammy Patrick, running her vehicle into Ms. Stafford's pallet rider. (*Id.*) Following the collision, Ms. Stafford and Ms. Patrick were immediately drug tested. (*Id.* at 240.) Ms. Stafford states that the collision

could have been avoided if she had reported the horn malfunction earlier in the day. (*Id.* at 234-35.) Ms. Stafford was cited for violation of safety rules, carelessness, and an unsafe act as result of the incident on April 21, 2006. (*Id.* at 224-25 & Exs. 18, 19; Wolfe Decl. ¶ 7.) Further, because she had been cited for three unsafe acts since April 3, 2006, Ms. Stafford was discharged. (*Id.* at 224-25 & Exs. 18, 19; Wolfe Decl. ¶ 7.)

Brenda Allen, Ms. Stafford's direct supervisor, was out of the office during the 18-day time period between Ms. Stafford's April 3, 2006, violation of a safety rule and her April 21, 2006, accident. (Wolfe Decl. ¶ 8.) Ms. Allen was prepared to meet with Ms. Stafford on April 21, 2006, regarding her written warning and final warning for the April 3 and April 7 incidents, respectively. (*Id.*) Before she could do so, however, Ms. Stafford was involved in the April 21 incident. (*Id.*) As a result, Ms. Stafford received the written warning, final warning, and discharge all in the same meeting on April 21. (*Id.*) The decision to terminate Ms. Stafford was a collective management decision made by Brenda Allen, Aaron Melhorn, and Kristen Wolfe, all of whom are white. (Wolfe Decl. ¶¶ 2, 10; Court Doc. No. 23-4, Allen Dep. 11-12; Court Doc. No. 23-5, Allen Decl. ¶¶ 3, 7; Court Doc. No. 23-6, Melhorn Decl. ¶¶ 3, 5.) Ms. Allen, Mr. Melhorn, and Ms. Wolfe all state that Ms. Stafford was terminated because she committed three safety violations within an 18-day period. (Wolfe Decl. ¶ 9; Allen Decl. ¶ 6; Melhorn Decl. ¶ 4.)

Ms. Patrick received a final warning for the April 21, 2006, incident. (Wolfe Decl. ¶¶ 12-13; Court Doc. No. 23-7, Incident Investigation Report.) Ms. Stafford and Ms. Patrick had different supervisors: Stafford was supervised by Brenda Allen, while Patrick was supervised by Craig Ferguson. (Allen Dep. 20; Allen Decl. ¶ 4.) Ms. Allen was not involved

in the discipline of Ms. Patrick and had no knowledge of what discipline Ms. Patrick received. (Allen Dep. 21-22; Allen Decl. ¶ 5.) Ms. Stafford states that she does not think Ms. Patrick should have been terminated for her role in the April 21 incident, and she does not know what discipline Ms. Patrick had received prior to that incident. (Stafford Dep. 330-31.) Ms. Wolfe states that Ms. Patrick was not terminated for her involvement in the April 21 incident because she was not at the same level of progressive discipline as Ms. Stafford. (Wolfe Decl. ¶ 14.)

Ms. Stafford states that she and other white females were disciplined when male co-workers and two black female co-workers were not disciplined at all or received less severe discipline. (Stafford Dep. 200.) Ms. Stafford does not have any personal knowledge of what prior discipline any of these co-workers had received for safety violations, but as co-workers, they sometimes discussed the discipline they had received. (*Id.* at 306.)

Ms. Stafford states that Brenda VanZant routinely scans cartons of merchandise without physically putting those cartons on a pallet, yet she has not received any discipline. (*Id.* at 307, 311.) Ms. Stafford does not know whether Brenda Allen also supervised Ms. VanZant, but she does know that Ms. VanZant worked on a different shift. (*Id.* at 311.) She also admits that the situation with Ms. VanZant was different than the March 29, 2006 incident for which Ms. Stafford was disciplined because Ms. Stafford's incident involved merchandise that could not be found for several days and resulted in lost time, whereas Ms. VanZant's situation did not create these sorts of problems. (*Id.* at 312.) Ms. Allen states that she does not recall disciplining Ms. VanZant for any infraction, nor does she recall failing to discipline Ms. VanZant when it would have been appropriate. (Allen Dep.

25.) She also states that Ms. VanZant picked products that were transported by FedEx, which are handled differently than products transported by LTL. (*Id.*) Chanelle Ashford-Smith, an employee of Sanford whose job responsibility it is to correct mistakes other employees make in terms of putting pallets in the wrong spot, states that she has corrected Ms. VanZant, as well as other employees, and that she has similarly corrected employees of both genders and all races who made mistakes similar to Ms. VanZant's mistakes. (Court Doc. No. 23-8, Ashford-Smith Dep. 7-8.) Ms. Earline Burgos, an employee of Sanford whose job responsibility it is to run reports on discrepancies, states that she recalls an instance where Ms. VanZant had a discrepancy but that all employees have discrepancies of some sort each day. (Court Doc. No. 23-9, Burgos Dep. 8.)

Ms. VanZant states that she had an accident in which she bumped into a wrapper, which resulted in metal-on-metal contact but no property damage. (Court Doc. No. 23-10, VanZant Dep. 8.) She reported the accident and was not written up for it. (*Id.*) She was not required to take a drug test. (*Id.*)

Ms. Stafford also states that several male co-workers had accidents on their forklifts that were more severe than her accidents, although they may have not been as temporally close as Ms. Stafford's accidents, yet the male co-workers were not terminated. (Stafford Dep. 313.)

Ms. Stafford admits that she does not have any personal knowledge of any other person at Sanford who engaged in the same behavior in which she did, with multiple safety issues within a close period of time, and who was not treated the same way as she was. (*Id.* at 313-14.) Ms. Wolfe states that, as Sanford's Human Resources Manager, she is unaware of any other employees—male or female, black or white—who committed three

or more safety violations within an 18-day period.  (Wolfe Decl. ¶¶ 3, 11.)  Ms. Allen states that she is unaware of any male employees who have been written up for three or more safety violations.  (Allen Dep. 35.)

Ms. Stafford states that Ms. Allen never made any statement to her indicating that Ms. Allen had a bias against white females or in favor of black individuals.  (Stafford Dep. 200.)  Ms. Allen, Ms. Wolfe, and Mr. Melhorn each state that neither Ms. Stafford's race nor her gender motivated her termination.  (Allen Decl. ¶ 8; Wolfe Decl. ¶ 15; Melhorn Decl. ¶ 6.)

Ms. Stafford theorizes that Ms. Allen is afraid to discipline black workers, male or female, because she is afraid she might be sued.  (Stafford Dep. 353.)  She does not have a theory as to why Ms. Allen treats female workers different than male workers, but she states that Ms. Allen clearly favors male workers.  (*Id.* at 353-54.)

In opposition to Defendant's motion, Ms. Stafford submits her own affidavit and the affidavits of Alvin Parker, Deborah Walchshauser, and Tammy Patrick.  In large part, these affidavits attempt to put in dispute Sanford's commitment to safety.  (*See* Parker Aff. ¶¶ 2-6, 9-10, 11; Stafford Aff. ¶¶ 3-14, 31; Walchshauser Aff. ¶¶ 4-6.)  Beyond general safety issues, the affidavits also attempt to identify instances in which similarly-situated persons were treated differently than Ms. Stafford.

Mr. Parker states that, during the time Ms. Stafford was employed at Sanford and shortly after her termination, he and several other male drivers had accidents that violated the safety rules and resulted in damage to company property, yet they were not terminated.  (Parker Aff. ¶¶ 7, 18.)  He also states that he witnessed Ms. VanZant and Kelly Patch, a male co-worker, make mistakes similar to Ms. Stafford's mistake with respect to her failure

-11-

to physically put merchandise on a pallet after scanning it.  (*Id.* ¶ 15.)  He further states that other males and one black female were treated differently for conduct that was the same as or similar to conduct engaged in by Ms. Stafford related to order processing.  (*Id.* ¶ 18.)  In addition, two days after Ms. Stafford was terminated, Mr. Parker witnessed an accident between Brad Majors and Rego Rodriguez, and both drivers were allowed back on their rides the next day.  (*Id.* ¶ 20.)

Ms. Walchshauser states that she also witnessed Ms. VanZant scanning merchandise without physically placing it on a pallet.  (Court Doc. No. 36, Walchshauser Aff. ¶ 7.)  Ms. VanZant did this on a daily basis but was not written up.  (*Id.*)  Ms. Walchshauser also states that, while Ms. Patrick was on final warning, she damaged company products and property when she hit a rack, but the accident was said to be caused by a design flaw and she was not disciplined.  (*Id.* ¶ 9.)  Before Ms. Patrick hit the rack, however, two white employees, one male and one female, had hit the same rack, but it was deemed their fault.  (*Id.*)

Ms. Patrick states in her affidavit that she was not put on final warning as a result of the April 21 incident until May 11, and that she witnessed Tracy Cartwright altering the paperwork associated with the incident.  (Court Doc. No. 37, Patrick Aff. ¶ 2.)

Much of Ms. Stafford's affidavit takes issue with Sanford's records regarding the incidents for which she was disciplined.  For example, she states that April 3 and April 7 were not the actual dates of the incidents that took place; instead, those are the dates on which the incidents were recorded, but the actual occurrences were several days earlier.  (Stafford Aff. ¶ 18.)  She also disputes that the incident investigation report related to Ms.

Patrick's involvement in the April 21 incident is correct, (*id.* ¶ 21), that her actions in the incident regarding her scanning of merchandise without physically placing it on the pallet resulted in significant confusion or lost time (*id.* ¶ 27), that she failed to cut the plastic on the pallet, as stated in the report associated with that incident (*id.* ¶ 28), and various other details related to the incidents (*id.* ¶ 38).

## III.  ANALYSIS

Defendant contends that Plaintiff has failed to present sufficient evidence to establish a *prima facie* case of gender or reverse race discrimination under Title VII or the THRA and that, even if Plaintiff has established a *prima facie* case, Plaintiff has failed to present sufficient evidence to establish that the stated reason for Plaintiff's termination was a pretext for discrimination.

At the outset, the Court notes that the analysis of a THRA claim is identical to the analysis of a related Title VII claim. *Shaw v. Danley*, 202 F.3d 270, 2000 WL 64945, at *3 n.2 (6th Cir. Jan. 10, 2000); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). Accordingly, the Court's analysis will encompass Plaintiff's Title VII claims and her THRA claims.

With respect to both types of discrimination alleged, there is no direct evidence of discriminatory intent in this case, so Plaintiff's discrimination claims must be analyzed under the familiar *McDonnell Douglas/Burdine* burden-shifting analysis. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-56 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1972). Under this analytical scheme, the burden first falls to Plaintiff to establish a *prima facie* case of discrimination. *Mitchell v. Toledo Hosp.*, 964

F.2d 577, 582 (6th Cir. 1992). The *prima facie* case for gender and reverse race discrimination are similar: Plaintiff must show that (1) she was a member of a protected class, (2) she was discharged, (3) she was qualified for the position she held, and (4) she was replaced by a person outside the protected class or was treated less favorably than a similarly-situated person outside the protected class. *Myers v. Cuyahoga County*, 182 F. App'x 510, 517 (6th Cir. 2006) (reverse race discrimination); *Overley v. Covenant Transport, Inc.*, 178 F. App'x 488, 491 (6th Cir. 2006) (gender discrimination); *see also Bailey v. Papa John's USA, Inc.*, No. 04-6499, 2006 WL 3740991, at *2 (6th Cir. Dec. 20, 2006); *Mitchell*, 964 F.2d at 582-83. To satisfy the first element of her reverse race discrimination claim, Plaintiff must demonstrate "background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Myers*, 182 F. App'x at 517.

If Plaintiff is able to meet her burden of showing a *prima facie* case of discrimination, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *Bailey*, 2006 WL 3740991, at *4; *Myers*, 182 F. App'x at 517; *Mitchell*, 964 F.2d at 584. If Defendant is able to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden then shifts back to Plaintiff to produce evidence from which a jury could find that Defendant's stated reason is actually a pretext for discrimination. *Bailey*, 2006 WL 3740991, at *4; *Myers*, 182 F. App'x at 518; *Mitchell*, 964 F.2d at 584.

Defendant first argues that Plaintiff has failed to present sufficient evidence as to the fourth element of the *prima facie* case with respect to both types of discrimination

alleged. In response, Plaintiff contends that she has presented sufficient evidence as to this element because "[t]he only proof in the record is that the position went unfilled." Plaintiff's contention in this regard is apparently based on the use of proof that the position went unfilled to establish the fourth prong in failure-to-promote cases such as *Farmer v. Cleveland Public Power*, 295 F.3d 593, 603 (6th Cir. 2002), and *Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497 (6th Cir. 2001), and in *McDonnell Douglas Corp.*, 411 U.S. at 802, which involved a refusal to rehire. The factual patterns of those cases, however, are somewhat different from the factual pattern in the instant case. As a result, proof that the position went unfilled is inapplicable in this case and may not be used by Plaintiff to establish the fourth element of the *prima facie* case of discrimination.[2] *See McDonnell Douglas Corp.*, 411 U.S. at 802 n.13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 n.3 (6th Cir. 2005).

In order for Plaintiff to meet her burden as to the fourth element under the factual pattern of the instant case, she must present sufficient evidence either that she was replaced by a person outside the protected class or that she was treated less favorably than a similarly-situated person outside the protected class. In this case, there is no evidence that Plaintiff was replaced by a person outside her class. Thus, the only way

---

[2] Further, even if proof that the position went unfilled were sufficient to meet the fourth element, Plaintiff has not established that the position, in fact, went unfilled, as there is no evidence in the record on this point. Under the *McDonnell Douglas/Burdine* burden-shifting analysis, Plaintiff has the affirmative duty to present sufficient evidence of each element of the *prima facie* case of discrimination, and Plaintiff has not done so with respect to this fact.

Plaintiff could meet her burden with respect to this element is by showing that she was treated less favorably than a similarly-situated person outside the protected class.[3]

"The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered similarly-situated." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 709-10 (6th Cir. 2006) (internal quotation marks and citation omitted). Rather, the plaintiff must demonstrate that she is "similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). In the disciplinary context (which is the context of the instant case) in order to be similarly situated, "the plaintiff and [her] proposed comparator must have engaged in acts of *comparable seriousness.*" *Wright*, 455 F.3d at 710. To make this assessment, the court may examine whether the plaintiff and the proposed comparator "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. Although the foregoing are the factors that are ordinarily relevant considerations in differential discipline cases, if such factors are not applicable in a particular case, then the court "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich*, 154 F.3d at 352.

---

[3] The Court notes that Plaintiff fails to argue that any of her co-workers were similarly situated to her, instead relying only on her mistaken understanding of the significance of the position going unfilled. Nevertheless, the Court will examine the evidence in the record as to that issue.

In the case at bar, Plaintiff has failed to present evidence sufficient to demonstrate that she was similarly situated to a non-protected person who was treated more favorably. First, as to her gender discrimination claim, the record contains several general descriptions of favoritism toward male employees. For example, Ms. Stafford states in her deposition that she and other female co-workers were disciplined when male co-workers were not disciplined or received less severe discipline (Stafford Dep. 200) and that several male co-workers had accidents on their forklifts that were more severe than her accidents but were not terminated (*id.* at 313). In addition, Mr. Parker states in his affidavit that he and several other male drivers had accidents that violated safety rules and resulted in damage to company property but were not terminated (Parker Aff. ¶¶ 7, 18) and that male co-workers were treated differently for conduct that was the same as, or similar to, conduct engaged in by Ms. Stafford related to order processing (*id.* ¶ 18). With respect to all of these general statements, it is impossible to conclude from the minimal evidence in the record that these male co-workers were similarly situated to Plaintiff, for it is not known who supervised these male co-workers, what prior disciplinary history they had, whether multiple safety violations were committed and, if so, the time period during which such violations occurred, or any other relevant facts.

In addition to these general statements, Mr. Parker's affidavit specifically mentions several men who he claims were treated differently than Ms. Stafford. Mr. Parker states that Kelly Patch made mistakes similar to Ms. Stafford's mistake with respect to her failure to physically put merchandise on a pallet after scanning it. (*Id.* ¶ 15.) He further states that he witnessed an accident between Brad Majors and Rego Rodriguez two days after Ms. Stafford's termination, and both drivers were permitted back on their rides the following

day.  (*Id.* ¶ 20.)  As is the case with the general statements, however, it is impossible to conclude from the evidence available regarding these male co-workers that they were similarly situated to Plaintiff.  While there is evidence in the record that Kelly Patch was also supervised by Brenda Allen (*id.* ¶ 15), there is no evidence in the record as to who supervised Mr. Majors or Mr. Rodriguez.  Moreover, there is no evidence in the record regarding the disciplinary history of any of these men or whether they committed multiple safety violations and, if so, the time period during which such violations occurred.

Without more specific evidence that would disclose similarities between Plaintiff and her male co-workers, the Court is simply without sufficient evidence to conclude that Plaintiff was treated less favorably than any similarly-situated male co-workers.  Accordingly, the Court must conclude that Plaintiff has failed to meet her burden of proving the fourth element of a *prima facie* case of gender discrimination.

Second, as to her reverse race discrimination claim, the record contains several general descriptions of favoritism toward black employees.  For example, in her deposition, Ms. Stafford states that she was disciplined when two black female co-workers were not disciplined at all or received less severe discipline.  (Stafford Dep. 200.)  In addition, Mr. Parker states in his affidavit that a black co-worker was treated differently for conduct that was the same as or similar to conduct engaged in by Ms. Stafford related to order processing.  (Parker Aff. ¶ 18.)  Again, and with respect to these general statements, it is impossible to conclude from the minimal evidence in the record that these black co-workers were similarly situated to Plaintiff, for it is not known who supervised these black co-workers, what prior disciplinary history they had, whether multiple safety violations were

committed and, if so, the time period during which such violations occurred, or any other relevant facts.

In addition to these general statements, there is evidence in the record regarding the alleged differential treatment of Tammy Patrick and Brenda VanZant. With respect to Ms. Patrick, the evidence in the record demonstrates that Ms. Patrick and Ms. Stafford were not working under the same supervisor. (Allen Dep. 20; Allen Decl ¶ 4.) Further, the evidence in the record demonstrates that, at the time of the April 21 accident, Ms. Patrick was not at the same level of progressive discipline as Ms. Stafford. (Wolfe Decl. ¶ 14.) Although there is evidence in the record that Ms. Patrick was involved in another accident while she was on final warning (Walchshauser Aff. ¶ 9), there is no evidence in the record regarding other safety violations by Ms. Patrick or the time period during which any other safety violations occurred. In addition, even with respect to the April 21 accident that involved both women, the conduct of the Ms. Patrick was different than Ms. Stafford—Ms. Patrick was following too closely, while Ms. Stafford had failed to report an earlier malfunction of her horn and injured herself trying to correct a second malfunction of her horn, which caused her to stop her pallet rider abruptly—which could account for differences in their discipline. (Stafford Dep. 225-26, 234-35, 253-54 & Ex. 18.) Based on the evidence in the record, the Court cannot conclude that Plaintiff has shown that she and Ms. Patrick were similarly situated.

With respect to Ms. VanZant, there is similarly not enough evidence in the record from which the Court could conclude that Ms. VanZant and Plaintiff were similarly situated. Mr. Parker states in his affidavit that Ms. VanZant was also supervised by Ms. Allen (Parker Aff. ¶ 15), but Ms. Stafford states in her deposition that Ms. VanZant worked a different

shift than Ms. Stafford (Stafford Dep. 311). Ms. Stafford also admits differences between Ms. VanZant's conduct and her own (*id.* at 312), and there is other evidence in the record that could explain differences in the treatment of the two women (Allen Dep. 25). Further, there is no evidence in the record regarding Ms. VanZant's prior disciplinary history or whether she committed multiple safety violations and, if so, during what time period these violations occurred. Based on the evidence in the record, the Court cannot conclude that Plaintiff has shown that she and Ms. VanZant were similarly situated.

Without more specific evidence that would disclose similarities between Plaintiff and her black co-workers, the Court is simply without sufficient evidence to conclude that Plaintiff was treated less favorably than any similarly-situated black co-workers. Accordingly, the Court must conclude that Plaintiff has failed to meet her burden of proving the fourth element of a *prima facie* case of reverse race discrimination.

Because Plaintiff has failed to provide sufficient evidence to establish the fourth element of a *prima facie* case of her gender and reverse race discrimination claims, Plaintiff has failed to meet her initial burden under the *McDonnell Douglas/Burdine* burden-shifting analysis. Accordingly, Defendant's Motion for Summary Judgment is well-taken and should be granted.

## IV.    CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment [Court Doc. No. 23] is **GRANTED**, and Plaintiff's Title VII and THRA claims of gender and race discrimination are **DISMISSED WITH PREJUDICE**.

In accordance with Federal Rule of Civil Procedure 54(d)(1), Defendant is entitled to recover its costs of this action.

SO ORDERED this 3rd day of July, 2007.

_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE